IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-01300-WDM-BNB

CHARLES ALLEN GARRISON,

     Applicant,

v.

JOE ORTIZ, Executive Director Colorado Department of Corrections, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

     Respondents.

---

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

---

Miller, J.

     This matter is before me on a recommendation of Magistrate Judge Boyd N.
Boland, issued November 22, 2005 (Docket No. 17), that Applicant Charles Allen
Garrison's "Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" (the
"Application") be denied.  Applicant filed a timely objection to the recommendation
(Docket No. 26) and, therefore, is entitled to *de novo* review of the portions of the
recommendation to which objection was made.  28 U.S.C. § 636(b); *Ocelot Oil Corp. v.
Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988).  Applicant was proceeding *pro
se* when he filed the Application but has been represented by counsel since at least
when he objected to Magistrate Judge Boland's recommendation.  I must construe
Applicant's *pro se* pleadings liberally and hold him to a "less stringent standard" for
those pleadings.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se
litigant's pleadings are to be construed liberally and held to a less stringent standard

than formal pleadings drafted by lawyers." (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972))). Having reviewed the pertinent portions of the record in this case including the Application, the answer, the recommendation, Applicant's objections, Respondents' response, and the trial court record, I find that the recommendation should be accepted as modified for the following reasons.

Background

Applicant was convicted and sentenced to life in prison without the possibility of parole for first-degree murder and using a deadly weapon in connection with the March 1999 murder of Brent Pellerin. On March 11, 1999, Applicant was approached, for reasons unrelated to the murder, by Colorado State Patrol in a parking lot west of Denver. During the encounter, the officer noticed that Applicant had a number of cuts on his arms. The officer checked for warrants and requested medical assistance for Applicant. As the officer was asking if Applicant would get out of the car so that he could see if Applicant was okay, Applicant drove away and drove his vehicle into a ravine. When police found him in the ravine, he attempted to stab himself in the stomach stating that he had done "something really bad" or "something terrible" and he wanted to die. The officers asked him what he was referring to and he told them to check their computers. After the officers subdued him, he was hospitalized and cited for traffic violations.

On March 17, 1999, Pellerin's body was found in his Aurora apartment. The coroner estimated that Pellerin died somewhere between March 9, 1999 and March 13, 1999 from two knife wounds—one to the upper chest and the other to the neck. Applicant, who had had a romantic relationship with Pellerin, was tried and convicted for

his murder.

At trial, two hearsay statements by the victim were admitted under exceptions to the hearsay rule.  On February 21, 1999, when both Pellerin and his manager, Richard Budnik, were at work, Pellerin answered approximately fifteen phone calls in less than an hour apparently from the same person.  Allegedly Pellerin became agitated by the phone calls, slamming the phone down, cursing, and stating "I don't care what you do." When Budnik asked Pellerin what was wrong, Pellerin stated that the caller, a friend from California, was threatening to kill him.  This statement was admitted at trial, over objection, as an excited utterance.

Approximately two weeks later, on March 8, 1999, Pellerin and Budnik were again working together.  Budnik recalls that Pellerin "was having a bad day" and had miscounted money and been short with the crew.  During a cigarette break, Budnik asked Pellerin what was wrong and Pellerin, referencing the phone calls on February 21, 1999, replied "my friend is coming out here from California, and he is going to kill me."  Budnik recommended that Pellerin call the police but Pellerin stated that "he doesn't mean anything; it is no big deal."  This statement was admitted at trial, again over objection, under the residual exception to the hearsay rule.

After a jury trial, Applicant was sentenced to life in prison without the possibility of parole.  Applicant appealed his conviction to the Colorado Court of Appeals (the "CCA") arguing that the trial court erred in admitting both sets of hearsay statements and by concluding that the physician-patient privilege did not apply to statements Applicant made to a nurse.  In an unpublished decision, the CCA rejected all of Applicant's arguments and affirmed the conviction.  After the court issued its opinion, the United

3

States Supreme Court decided *Crawford v. Washington*, 541 U.S. 36, 68 (2004), which held that "testimonial statements" of a witness who does not appear at trial could only be admitted if the witness was unavailable to testify and the defendant had had a prior opportunity to cross-examine the witness. Arguing that *Crawford* applied to his case, Applicant applied for and was granted rehearing. After considering Applicant's *Crawford* arguments, the CCA again affirmed the conviction. *See People v. Garrison*, 109 P.3d 1009 (Colo. Ct. App. 2005). Applicant applied for, but was denied, certiorari to the Colorado Supreme Court.

Thereafter, on July 14, 2005, Applicant filed his application for writ of habeas corpus with this Court. On November 11, 2005, Magistrate Judge Boland issued a recommendation that the application be denied (Docket No. 17). Applicant timely objected (Docket No. 26) and Respondents, on Order from this Court, responded to the objections (Docket No. 32).

<u>Legal Standard</u>

As Applicant filed his Application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs my review. *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before an application may be considered, however, the Applicant

must have exhausted all available state remedies.[1]  *Id.* § 2254(b).  The grounds for

granting a writ of habeas corpus are very limited: "a writ of habeas corpus . . . shall not

be granted with respect to any claim that was adjudicated on the merits in State court

proceedings unless the adjudication of the claim (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based on unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  *Id.* § 2254(d).

A state court decision is "contrary to" clearly established Federal law if it "'applies

a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a different result from [Supreme Court]

precedent.'"  *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529

U.S. 362, 405–06 (2000)).  A state court decision involves an "unreasonable

application" of clearly established Federal law when "'the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of the [applicant's] case.'"  *Lockyer v. Andrade*, 538

U.S. 63, 75 (2005) (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application'

clause requires the state court decision to be more than incorrect or erroneous . . . . The

state court's application of clearly established law must be objectively unreasonable."

*Id.* (citing *Williams*, 529 U.S. at 409–10, 412).  A "'federal habeas court may not issue

---

[1]  In this case, it is undisputed that Applicant exhausted his state remedies.

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (quoting *Williams*, 529 U.S. at 411). Finally, when analyzing an application, all determinations of factual issues by the State court are presumed to be correct and the Applicant has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Discussion

In his application filed *pro se*, Applicant argues that his constitutional rights were violated in two ways at the trial: (1) the admission of the February 21, 1999 statements by Pellerin under the excited utterance exception violated his Sixth Amendment right of confrontation; and (2) the admission of the March 8, 1999 statements by Pellerin under the residual exception to the hearsay rule violated his Sixth Amendment right of confrontation.[2] Liberally construing Applicant's Application, Magistrate Judge Boland addressed both Applicant's express arguments and his implicit argument that admission of the hearsay statements was contrary to *Crawford*. He determined that *Crawford* did not apply and that there was no basis on which to grant Applicant's Application because there was no indication that the CCA's decision was contrary to, or and unreasonable application of, clearly established law or that the CCA's factual determinations were

---

[2] After Magistrate Judge Boland issued his recommendation that Applicant's claim be dismissed, Applicant retained counsel who drafted and filed Applicant's objections to the recommendation. Because Applicant's objections were much more thorough and precise than the original Application, I ordered Respondents to respond to the objections. As they have done so, both sides have had ample opportunity to argue the merits of the claims and defenses. Therefore, although some arguments were not thoroughly argued in the original Application, I conclude that review of all issues presented in Applicant's objection is warranted.

objectively unreasonable. Applicant objects arguing that *Crawford* does apply to this case, that the February 21, 1999 statements were improperly classified as an excited utterance, and that the March 8, 1999 statements lack the required indicia of reliability because Pellerin had a motive to lie when he made the statement. Finally, Applicant moves for an evidentiary hearing to "rebut the factual determinations made by the state court."[3] (Obj. at 14.) Respondents responded to the objections essentially arguing that the CCA was correct in their determinations and opposed an evidentiary hearing as unnecessary.

1.  Applicability of *Crawford v. Washington*

The Sixth Amendment's Confrontation Clause provides an accused with the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Under previous Supreme Court precedent, hearsay statements of an unavailable declarant were admitted in conformity with the Confrontation Clause if the statement bore the "adequate 'indicia of reliability.'" *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). Such reliability was "inferred where the evidence [fell] within a firmly rooted hearsay exception" or if the statement had "particularized guarantees of trustworthiness." *Id.* The Supreme Court, however, overruled *Roberts* in 2004 in *Crawford* with respect to

---

[3] I also note that Applicant requests *de novo* review of "all pleading submitted including exhibits." (Obj. at 1.) *De novo* review, however, is only available for the portions of the recommendation that are specifically objected to. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985); *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996) ("[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."). Therefore, I will engage in *de novo* review of only the portions of the recommendation to which Applicant has specifically objected.

"testimonial statements." *Crawford*, 541 U.S. at 68. The *Crawford* court noted that the Confrontation Clauses's "ultimate goal is to ensure reliability of evidence, but it is procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61. Therefore, the Court concluded that "where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68. The *Crawford* court did not provide a precise definition of testimonial statements but did provide examples: "*ex parte* in-court testimony or its functional equivalent . . . , extrajudicial statements . . . , [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52.

The *Crawford* court left open the issue of the proper analysis for nontestimonial statements. *Id.* at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether."). The Tenth Circuit has held that the *Roberts* framework remains applicable to nontestimonial statements. *United States v. Ramirez*, 479 F.3d 1229, 1247 (10th Cir. 2007) ("We analyze [nontestimonial] under the pre-*Crawford* rubric of *Ohio v. Roberts*, . . . which requires a 'showing of particularized guarantees of trustworthiness.'" (citations omitted)).

In this case, the CCA determined that, because the statements which Applicant contested in his appeal and in this Application were not testimonial in nature, *Crawford*

was inapplicable. *Garrison*, 109 P.3d at 1011 ("Nothing in the record indicates that the victim's statements to the training manager would constitute testimonial hearsay. The statements were not made to the police, and there is no indication that the manager was acting as a police agent. Thus, we conclude that *Crawford* does not apply here."). Magistrate Judge Boland also determined that *Crawford* was inapplicable. I agree. The statements were made by Pellerin while at work to his manager and were not tied to the investigation of a crime in any way. Certainly, when discussing his personal problems with his manager during a cigarette break or while working, Pellerin did not anticipate that the statements "would be available for use at a later trial." *Crawford*, 541 U.S. at 52. Indeed, Pellerin himself acknowledged as much when he refused to contact the police with regard to the alleged threats and stated that the threats were "no big deal." Although Applicant continues to argue that *Crawford* applies, he provides no reason or argument that these statements should be construed as testimonial. Thus, I conclude, as did the CCA and Magistrate Judge Boland, that *Crawford* does not apply because the statements were nontestimonial.

2.    Admission of Hearsay Statements

As I have concluded that *Crawford* does not apply because the statements were nontestimonial, I must analyze the statements under the traditional *Roberts* framework. *See Ramirez*, 479 F.3d at 1247. Under *Roberts*, hearsay is properly admitted in conformity with the Sixth Amendment when the witness is unavailable and the statement either "falls within a firmly rooted hearsay exception" or has "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. In this case, there is no question that the declarant was unavailable at the trial as the declarant was the murder

victim.  Applicant does, however, challenge the CCA's finding that the statements either fell in a "firmly rooted hearsay exception" or had "particularized guarantees of trustworthiness."  *Id.*

    a.    *February 21, 1999 Statements*

Applicant contends that his Sixth Amendment right to confrontation was violated when Pellerin's February 21, 1999 statements were admitted under the excited utterance exception to the hearsay rule.  The excited utterance exception provides that a statement is not barred by the hearsay rule if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition."  Fed. R. Evid. 803(2).  Therefore, it requires "(1) there was a startling event; (2) the statement was made while the declarant was under the stress of excitement from this event; and (3) the statement related to this event."  *Woodward v. Williams*, 263 F.3d 1135, 1140 (10th Cir. 2001).  The Supreme Court has determined that this exception is "firmly rooted."  *White v. Illinois*, 502 U.S. 346, 356 n.8 (1992).  Generally, this exception is based on the idea that such a statement is made "under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous."  *Idaho v. Wright*, 497 U.S. 805, 820 (1990).  Courts have recognized a statement following a threat as an excited utterance.  *See United States v. Martin*, 59 F.3d 767, 769 (8th Cir. 1995) (holding that a statement made in response to an inquiry regarding a threat over the phone was an excited utterance); *United States v. Vretta*, 790 F.2d 651, 657 n.4 (7th Cir. 1986) (holding admissible as an

excited utterance a statement regarding a threatening phone call); *see also United States v. Ledford*, 443 F.3d 702, 710 (10th Cir. 2005) (holding that a statement about a threat that was said during a domestic altercation was admissible as an excited utterance). Furthermore, the exception may apply to a statement made in response to a question. *Martin*, 59 F.3d at 769; *Navajo Freight Lines v. Mahaffy*, 174 F.2d 305, 308 (10th Cir. 1949) (holding that a statement made after an accident in response to a question was "admissible as a spontaneous declaration under the res gestae exception to the hearsay rule").

The CCA determined that the statements by Pellerin on February 21, 1999 were properly admitted under the excited utterance exception to the hearsay rule. *Garrison*, 109 P.3d at 1011–12. It found that the "record supports the trial court's conclusion that the victim was 'extremely excited and mad' and had 'no time to reflect on his statements that were made under stress.'" *Id.* at 1012. It also noted that "the fact that the statement was made in response to a question does not preclude it from being an excited utterance." *Id.* Magistrate Judge Boland determined that the CCA's resolution of this issue was "not contrary to established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding." (Rec. at 7.) Applicant objects that both the CCA and Magistrate Judge Boland "ignored key facts" including (1) the calls came in over an hour period; (2) Pellerin received the calls while at work, which allegedly is more distracting due to the surrounding circumstances of a business; (3) the statement was made in response to a question; and (4) Pellerin

continued to work during the phone calls.[4]

After considering Applicant's objections, I agree with Magistrate Judge Boland that a writ of habeas corpus is not warranted because the CCA's conclusion was not contrary to, or involved an unreasonable application of, clearly established federal law. *Roberts* clearly states that the Sixth Amendment's guarantee of confrontation of witnesses is not violated by admission of a hearsay statement that either falls within a "firmly rooted exception" or has "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. Here, the CCA determined that the statements fell within the firmly rooted excited utterance exception. As the CCA did not "apply a rule that contradicts" *Roberts* nor "confront[] a set of facts that are materially indistinguishable from" a Supreme Court case and reach a different result, the CCA's determination that the admission of the February 21, 1999 statements was proper does not fall within the "contrary to" clause of the AEDPA. *See Price*, 538 U.S. at 640 . Furthermore, I cannot say that the CCA's determination that the statement was an excited utterance was objectively unreasonable; therefore, the "unreasonable application" clause of the statute does not apply. *See Lockyer*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 409). The CCA noted that the record supported a finding that Pellerin was visibly upset about the phone calls and noted the specific circumstances of the calls including that Pellerin was at work and the phone calls came over the course of an hour. *Garrison*, 109 P.3d at 1011–12. Given the rationale of the exception—that the declarant is unlikely to

---

[4] I note that much of Applicant's objection focuses on the fact that Magistrate Judge Boland failed to analyze the February 21, 1999 statements under the *Crawford* standard. As I have already determined, however, *Crawford* is inapplicable to these statements as the statements were nontestimonial.

fabricate or be coached in his statement when making a statement while under the stress of a startling event—the CCA's reliance on Pellerin's demeanor and excitement during the phone calls to determine if the statement qualified as an excited utterance was not objectively unreasonable.

Applicant's arguments that the CCA did not consider the fact that the calls took place at work and were over a one hour period are without merit. The CCA expressly noted that the calls were over an hour period while Pellerin was at work but found that the calls were sufficiently startling to cause the victim to be emotionally upset and have "no time to reflect on his statements." *Id.* at 1012. Similarly, Applicant's argument that the CCA did not consider that the statement was in response to a question is factually incorrect. The CCA determined that the "fact that the statement was made in response to a question does not preclude it from being an excited utterance." *Id.* I conclude that Applicant has failed to rebut, by clear and convincing evidence, the presumption that the state court's factual determinations were correct. *See* 28 U.S.C. § 2254(e)(1). Therefore, the admission of the February 21, 1999 statements does not warrant a writ of habeas corpus.

b. *March 8, 1999 Statements*

Applicant also contends that his Sixth Amendment right to confrontation was violated when Pellerin's March 8, 1999 statements were admitted under the residual exception to the hearsay rule. Fed. R. Evid. 807 states that a statement that is not admissible pursuant to one of the particularized exceptions in Fed. R. Evid. 803 or 804 may still be admissible if it has "equivalent circumstantial guarantees of trustworthiness" and the court determines that "(A) the statement is offered as evidence of a material

13

fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."  The residual exception is to be applied only in exceptional or extraordinary circumstances "'where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice.'"  *United States v. Harrison*, 296 F.3d 994, 1004, 1006 (10th Cir. 2002) (quoting *United States v. Tome*, 61 F.3d 1446, 1452 (10th Cir. 1995)).

Because the residual exception to the hearsay rule is not a "firmly rooted exception," to be admissible and not run afoul of the Confrontation Clause, the statement must have particularized guarantees of trustworthiness.  *Roberts*, 448 U.S. at 66.  This requirement is similar to the residual hearsay exception itself which requires "circumstantial guarantees of trustworthiness."  Fed. R. Evid. 807.  The Supreme Court has interpreted "particularized guarantees of trustworthiness" under *Roberts* to mean that the trustworthiness of the statement "must be shown from the totality of the circumstances . . . that surround the making of the statement and render the declarant particularly worthy of belief."  *Idaho v. Wright*, 497 U.S. 805, 819 (1990).  Indeed, the statement must be "so trustworthy that adversarial testing would add little to its reliability."  *Id.* at 821.

In this case, the CCA determined that the trial court did not err in admitting Pellerin's March 8, 1999 statements because the statements had the requisite particularized guarantees of trustworthiness.  As the CCA stated, "the trial court found that these statements were a continuation of the February 21 statements, the victim had

14

no motive to lie, and the statements were offered as evidence of a material fact."
*Garrison*, 109 P.3d at 1012. The trial court also thought that the statements qualified as excited utterances and present sense impressions. *Id.* In determining whether Pellerin had motive to lie, given that he was talking to his boss about his work performance that day, as alleged by Applicant, the CCA determined that "[t]he record does not suggest that [Budnik] directly addressed or confronted the victim about his performance that day. Rather, [Budnik] only encouraged him to do something about the threats." *Id.* at 1013. The CCA also noted that "[t]he victim's own reference to the previous statements supports a conclusion that the statements were voluntary and made from the victim's personal knowledge." *Id.*

Magistrate Judge Boland determined that the CCA's adjudication of Applicant's claim regarding the March 8, 1999 statements "was in accordance with clearly established federal law and is based on a reasonable determination of the facts presented." (Rec. at 10.) Magistrate Judge Boland also determined, however, that even if he found constitutional error in the CCA's decision, it was harmless error because Applicant had made no showing of actual prejudice. Therefore, Applicant was not entitled to habeas relief. Applicant objects to Magistrate Judge Boland's recommendation on the grounds that Pellerin did have a motive to lie—he was providing an explanation to his boss for his poor performance that day—and, therefore, the statements do not carry particularized guarantees of trustworthiness.[5]

---

[5] Again, I note that much of Applicant's objection focuses on the fact that Magistrate Judge Boland failed to analyze the March 8, 1999 statements under the *Crawford* standard. As I have already determined, however, *Crawford* is inapplicable to these statements as the statements were nontestimonial.

After considering Applicant's objections, I conclude that Magistrate Judge Boland was correct in determining that the CCA's decision was not contrary to clearly established law. The CCA correctly noted that the statement must have particularized guarantees of trustworthiness to be admissible in conformity with the Confrontation Clause. *Garrison*, 109 P.3d at 1012. However, whether the CCA's application of that rule—*i.e.*, the determination that the March 8, 1999 statements had particularized guarantees of trustworthiness—is a much more difficult question. The determination of whether a discretionary decision, such as whether a statement has particularized guarantees of trustworthiness, was objectively unreasonable, as opposed to merely incorrect or erroneous, involves drawing an extremely thin line, especially given the fact that the Supreme Court has not provided factors to consider when making the determination. This determination is even more difficult in this case given the CCA's reliance on only one indicium of reliability—the speculation that Pellerin had no motive to lie.[6] It is unnecessary, however, to draw this precarious line because I agree with Magistrate Judge Boland that even if the admission did violate the confrontation clause, it was harmless error. Therefore, I decline to address whether the CCA's determination was objectively unreasonable and, instead, move forward to the harmless error analysis.

---

[6] I note that the CCA's reliance on the corroboration of these statements with the February 21, 1999 statements is not a guarantee of trustworthiness. *Wright*, 497 U.S. at 823 ("[T]he use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility.*"); Crespin v. New Mexico*, 144 F.3d 641, 649 (10th Cir. 1998).

Confrontation clause violations are constitutional errors that require harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Brecht v. Abrahamson*, 507 U.S. 619, 653 (1993); *Crepsin*, 144 F.3d at 649 (citing *Van Arsdall*, 475 U.S. at 684). "[A]n error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 127 S.Ct. 2321, 2325 (2007) (quoting *Brecht*, 507 U.S. at 631). To be entitled to habeas relief, Applicant must show that the admission of the March 8, 1999 statements resulted in "actual prejudice." *Brecht*, 507 U.S. at 637.

Applicant requests an evidentiary hearing so that he may establish that the admission of the statements resulted in actual prejudice. If an applicant has "failed to develop the factual basis of a claim in the State court proceeding" an evidentiary hearing may only be granted if the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered and the "facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). "However, 'if the [applicant] did not fail to develop the factual basis fo his claim in State court, § 2254(e)(2) is not applicable and a federal habeas court should proceed to analyze whether a hearing is appropriate or required under pre-AEDPA standards.'" *Young v. Sirmons*, 486 F.3d 655, 679 (10th Cir. 2007) (quoting *Bryan v. Mullin*, 335 F.3d 1207, 1241 (10th Cir. 2003)). Therefore, "[a] habeas [applicant] who has not failed to develop the factual basis for his claim in state court is entitled to an evidentiary hearing in federal court 'so long as his allegations, if true and if not contravened by the existing factual record, would entitle

him to habeas relief.'" *Gonzales v. Tafoya*, 515 F.3d 1097, 1121 (10th Cir. 2008)

(quoting *Anderson v. Attorney Gen. Of Kan.*, 425 F.3d 853, 858 (10th cir. 2005)).  An

applicant is not deemed to have failed to "develop his claim 'unless there is a lack of

diligence, or some greater fault.'"  *Young*, 486 F.3d at 679.

Applicant seeks an evidentiary hearing to "rebut the factual determinations made

by the state court" and demonstrate that admission of the statements resulted in actual

prejudice.  Although it is slightly unclear which standard is applicable in this case, it

appears that 28 U.S.C. § 2254(e)(2) applies because Applicant could have developed

the record in the State court proceeding but did not and offers no explanation for such

failure.  Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is not appropriate in this

case as Applicant has failed to allege any of the elements required for an evidentiary

hearing such as a new rule of constitutional law or a factual predicate that could not

have previously been discovered.  I note that Applicant is also not entitled to an

evidentiary hearing under the pre-AEDPA standard that would apply if it was not a "lack

of diligence or some greater fault" that caused him to fail to develop his claim in the

state court proceedings.  Applicant has set forth no specific allegations from which I

may determine whether they contravene the factual record or whether, if true, they

would entitle him to habeas relief.  In fact, Applicant articulates no facts that he intends

to demonstrate other than a general allegation of "actual prejudice."  I also note that the

factual record is very clear in this case and, thus, no evidentiary hearing is necessary.

Therefore, I will deny Applicant's request for an evidentiary hearing.

Turning now to the harmless error analysis, Applicant has articulated no specific

prejudice that he suffered as a result of the introduction of the March 8, 1999

statements.  Indeed, he makes only broad conclusory allegations that "[t]he actual prejudice is obvious" and that without the admission of the hearsay statements "a reasonable jury would have found the Applicant not-guilty." (Obj. at 12.)  He does not address the substantial other evidence presented against him.  For example, Colorado State Patrol Trooper John Aho testified that Applicant had a number of "fairly deep" cuts on his left arm on March 11, 1999.  (State Trial Court Record (hereinafter "Record"), v. 4, at 95, 124.)  Applicant also stated to Trooper Aho that he had "tried and not succeeded."  *Id.* at 96.  When police officers found Applicant after he had driven into a ravine on March 11, 1999, Applicant pointed a knife at his stomach and told the officers that he had "done something really bad" and "something terrible" and that he wanted to die.  *Id.* at 101–04, 111.  When the officers questioned Applicant about what he had done, Applicant stated that they should "check their computers" to find out.  *Id.* Applicant attempted to stab himself in the heart when the officers were subduing him in the ravine.  *Id.* at 113–14.

Applicant's case manager and discharge planner from St. Anthony's hospital testified that Applicant told him that he had come to Colorado to have a relationship with a man but that it had not worked out and that he could not go to the ex-boyfriend for help with transportation after his hospital release as the relationship had ended. (Record, v.9 at 26–27, 32.)  Pellerin's sister testified that Pellerin and Applicant were involved in a romantic relationship at least in 1997.  *Id.* v.4 at 152.  A co-worker of Applicant's from California testified that Applicant told him he had ended a relationship with another man and that he was going to Colorado to straighten out the relationship and that he may commit suicide.  *Id.* v.8 at 273.  The evidence also showed that

Applicant was scheduled to begin a nursing job in Colorado on March 15, 1999. *Id.* at 196.

The Arapahoe County coroner testified that Pellerin suffered two major knife wounds: one to the heart and one to the neck. *Id.* at 204–07. He also testified that Pellerin had a number of superficial wounds on his wrists that were consistent with defensive wounds. *Id.* at 206. The coroner estimated that the date of death was approximately between March 10 and March 13, 1999. (Record, v.8 at 208.) Two neighbors of Pellerin's, a husband and wife, both testified that they saw Applicant standing outside of Pellerin's apartment (where Pellerin's body was found on March 17, 1999) for approximately an hour and a half to two hours on March 11, 1999. *Id.* at 65–74, 167–76. Finally, as I have determined that the February 21, 1999 statements were properly admitted into evidence, I must consider this evidence in the harmless error analysis. The February 21, 1999 statements demonstrated that Pellerin had stated to his Budnik that the approximately fifteen phone calls that he received while at work on February 21, 1999 were from a friend of his from California who was threatening to kill him. *Id.* v.4 at 169–170.

Given the substantial amount of evidence presented against Applicant at the trial, I conclude that, even if the introduction of the March 8, 1999 statements violated the Confrontation Clause, it was harmless error. There is no indication that the admission of the March 8, 1999 statements "had a substantial and injurious effect or influence in determining the jury's verdict." *Fry*, 127 S.Ct. at 2325. This is especially true as the content of the March 8, 1999 statements was identical to the content of the February 21, 1999 statements that I have determined were admitted in conformity with the

Confrontation Clause. Therefore, I conclude that Applicant's Application for a Writ of Habeas Corpus should be denied as Applicant has failed to demonstrate actual prejudice.

Accordingly, it is ordered:

1.      The recommendation of Magistrate Judge Boland (Docket No. 17) issued November 22, 2005 is accepted.

2.      Applicant Charles Allen Garrison's "Application for Writ of Habeas corpus Pursuant to 28 U.S.C. § 2254" (Docket No. 1) is denied.

3.      To the extent that it is a motion, Applicant's motion for a evidentiary hearing contained in his objection to the recommendation (Docket No. 26) is denied.

4.      This case is dismissed with prejudice.


DATED at Denver, Colorado, on June 6, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge